### THORN and another *vs.* BELL.

Where the defendant, sued as indorser of two promissory notes, had written to the plaintiffs, agreeing to an arrangement giving further time of payment to the makers, and that no act of the plaintiffs in so doing should exonerate the defendant as indorser, and waiving notice of protest, *held*, that the defendant was not estopped by the letter from setting up as a defence, that the indorsements were forgeries.

The letter is evidence to be submitted to the jury as to whether the defendant may not have ratified and affirmed the indorsements, though not his own.

The defendant is estopped by the letter from setting up as a defence the want of notice of non-payment, and the giving of time to the makers.

Principle of the doctrine of estoppel stated, *per* BEARDSLEY, J.

THE defendant, Robert P. Bell, was sued as indorser upon two promissory notes, bearing date June 1st, 1837, signed by George W. Ypson & Co., and payable to the order of Robert P. Bell and indorsed by him. The notes were for $887.34 each, one being payable fourteen and the other sixteen months from date. On the 16th of August, 1838, these notes were held by the plaintiffs, by whom a letter of that date was received from the defendant, assenting to an arrangement about to be entered into between the plaintiffs and makers of the notes, extending the time of payment twelve months, and waiving any defence which might arise from the acts of the plaintiffs exonerating him, the defendant, as indorser. The arrangement refered to was consum-

Thorn v. Bell.

mated on the 21st of September, 1838, and by it the plaintiffs bound themselves not to prosecute the notes for twelve months, unless requested so to do by the defendant, and to apply the proceeds of certain securities on the notes in question. Witnesses were sworn to prove the signature to the letter to be the defendant's, which was there offered in evidence as an admission that the indorsements on the notes were the genuine signatures of the defendant. Objected to by the counsel for the defendant, and overruled by the judge. Exception. The notes were offered in evidence under the proof sought to be derived from the letter before presented. Witnesses were sworn to prove that these two notes were the only ones in the plaintiff's possession in August, 1838, with the defendant's name on. The receiving the notes was objected to by defendant's counsel, and exception overruled. Evidence was given to prove that there were many notes in circulation in the city of New York, signed George W. Ypson & Co., and indorsed by Robert P. Bell. Defendant's counsel offered evidence to prove that many of these were forgeries. Excluded by judge and exception taken. Evidence was received to prove that the indorsements on the notes in suit were forgeries, but was by the direction of the judge, taken from the consideration of the jury. The cause was submitted to the jury without summing up, under the charge of the judge, who instructed them, that, admitting the indorsements of the defendant's name upon the notes declared upon to be forgeries, and that there was no ratification express or implied except that contained in the agreement signed by the defendant, and that the defendant did not know at the time of signing that instrument that his name had been forged upon those notes, or that any forgery had been committed on his name, yet if the plaintiffs acted in good faith and complied with the terms and conditions of said agreement the defendant is not at liberty to deny in this action his liability as indorser of the notes on the ground of forgery. To this charge the counsel for the defendant excepted. Under the instructions a verdict was rendered for the plaintiffs for $2,222·24.

Defendant moves for a new trial on a bill of exceptions.

*L. S. Eddy*, for defendant, cited *Bell* v. *Shields*, 4 Har. N. J. Rep., 93; 1 Str., 94, and cases cited; 2 T. R., 763; Welles' R., 483, note; 10 Mass. R., 39; 1 Wend., 355; 2 H. Black., 252; 9 Cow., 674.

*N. F. Waring*, for plaintiffs.

*By the Court*, BEARDSLEY, J.   On the 16th of August, 1838, the plaintiffs held two promissory notes, bearing date June 1st, 1837, signed by George W. Tyson & Co., payable to the order of Robert P. Bell, (which is the name of the defendant,) and indorsed *Robert P. Bell*.   Each note was for $887. 34, one being payable fourteen, and the other sixteen months from date.   How the plaintiffs obtained these notes does not appear, but it is to be assumed that they were taken by them for a valuable consideration.   The plaintiffs, at this time, were in business in the city of New York, and the defendant resided at Stanhope, in the state of New Jersey.   He had for several years indorsed more or less for the firm of Tyson & Co., but appears not to have kept any regular memoranda to show what notes were from time to time indorsed by him.

On the 16th of August, 1838, the defendant addressed a letter to the plaintiffs, in which he says, he has been informed by Messrs. G. W. Tyson & Co. that they were about to make a proposition to secure the plaintiffs for the two notes they held against said Tyson & Co. as drawers and the defendant as indorser, amounting to $1,774.68 or thereabouts, due and to become due, on the plaintiffs agreeing not to trouble the makers or indorsers for twelve months, and that the proceeds of said securities should be applied to the payment of said notes; and then adds, that should the plaintiffs think it advisable to accept of said proposition, the defendant authorizes them to enter into the same, to secure said plaintiffs as proprietors of said notes, as well as the defendant as indorser; and he engages to hold himself liable as indorser on the same without protest; and concludes by assuring the plaintiffs that if the securities they may so receive shall not have been liquidated within the

time specified, no act of theirs in the premises shall exonerate the defendant as indorser, the proposed arrangement being for the mutual benefit of the holders and indorser of said notes.

This was sent by the defendant to George W. Tyson, and it appears that on the twenty-first day of September, 1838, the plaintiffs received of Tyson & Co. a draft for $1,800.00, with the afore mentioned letter from the defendant, and thereupon the plaintiffs executed a writing stating they had received said draft and letter, and agreeing not to prosecute the defendant or said Tyson & Co. on the two notes, unless requested so to do by the defendant, for twelve months from the 16th of August, 1838, and also agreeing to apply on the notes whatever they might receive on said draft.

Evidence was given to show that the indorsements were forgeries, but the circuit judge ruled that, even if the indorsements were forged and the defendant was in total ignorance of the forgery when he wrote the letter of the 16th of August, 1838, still, the plaintiffs having received it and acted upon it in good faith, and complied with its terms and conditions, the defendant was not at liberty to deny his liability as indorser of these two notes on the ground of forgery.

The defendant may be liable on these indorsements although not made by himself. He may have authorized some other person to make them, or it may appear that he has so ratified and affirmed them as to make them his own. This letter is proper evidence for the consideration of a jury in determining these questions, but I do not think the letter, or any thing done upon it, should preclude the defendant from showing that the indorsements are forgeries and not binding upon him.

A party may be estopped by his declarations or his acts; such instances are not rare. But the principle on which the estoppel arises is that of fair dealing and common honesty. A particular character or relation is assumed, or some act done, upon which another person relies, as he has a right to do, and is thus induced to incur obligations or in some form

make advances of money or property. It would be grossly inequitable, under such circumstances, to allow the pretender to repudiate his professions and recede from the relation he had assumed, and the law will not permit him to do it. This is the principle of estoppel, and it has been applied in a great variety of cases, and should be on every occasion to which, in reason and justice, it is applicable. One who represents himself as a partner, and obtains credit as such, can not, when sued, deny that he was such copartner. If a man recognizes and treats a woman as his wife, by which she obtains credit for necessaries, he is estopped from denying that she is his wife, and is responsible for necessaries so obtained. If a defendant, before process is sued out against him, is asked his name, and he says John, and is accordingly arrested by that name, he shall not be allowed to allege a misnomer and maintain an action against the officer for arresting him by a wrong name. (1 Stark. Ev., 7th Amer. ed., 345; 2 *id.*, 18, 19, 22, 437, 805; Cowen and Hill's notes to 1 Phil. Ev., note 192, pp. 199 to 210.)

But the estoppel "prevails only in favor of the person who has acted upon or been drawn in by the false act or representation." (See the note last above.) Thus, in *Wallis* v. *Truesdell* (6 Pick., 457), Mr. Justice *Wilde* says: "As to the question of property, the jury were instructed that the declarations made by the plaintiff were strong evidence against him, but were not conclusive; this was certainly proper, unless, as the defendants contend, they operated by way of estoppel, which can not be maintained. If these declarations had been acted on by the other party, and thereby the plaintiff had acquired some advantages, or the defendants had sustained damages, it would have been otherwise." (*Dezell* v. *Odell*, 3 Hill, 215, and cases there cited.) This is the correct principle, and its application to this case must determine the present question.

There is nothing in the case to induce a suspicion that the defendant intended by his letter to defraud or mislead the plaintiffs; nor is the estoppel placed upon any such ground by the judge. Nor were the plaintiffs induced by

the latter to purchase the notes or make advances upon them. The notes were theirs before the letter was written.

It was not an object of the letter to satisfy the plaintiffs that the endorsements were genuine. It was written for quite a different purpose. The plaintiffs held the notes of Tyson & Co. upon which the defendant's name appeared as endorser. Tyson & Co. desired to gain time, and were about to ask the plaintiffs to give them another year before payment would be required. But the plaintiffs could not make such an arrangement with the makers of the notes, unless the endorser gave his consent, without thereby discharging the latter from his liability. This is the rule as to all persons standing in the relation of surety; and it was to obviate this difficulty, and leave the plaintiffs at liberty to make such an arrangement as they thought proper to give the makers of the notes time for payment, that the letter was written.

This appears to have been the sole object in asking such a letter from the defendant. He, however, goes further in the letter, and, although one of the notes was already past due, and notice of non-payment had probably been sent by mail to the defendant, he adds that he will hold himself liable as endorser without protest. It may be granted that the letter concludes the defendant in both these respects, so that he shall not now be allowed to set up the want of notice of non-payment, or the plaintiffs' agreement to give time to the makers, in bar of an action against himself, as indorser. So far I agree that he is estopped by this letter, and this, in my judgment, is the extent to which the principle can be carried. It might be urged with great force, that the plaintiffs relied on this letter as authorizing them to give time for a year to the makers of the notes, and I admit that the defendant could not be allowed, after writing this letter, to take the ground that he is discharged by the plaintiffs' agreement to give time.

But it is said the defendant gained an advantage, and the plaintiffs suffered a prejudice, by this letter, and therefore the defendant should be estopped from denying that he is bound by the endorsements. Let us see how this is.

If the endorsements are forgeries, and never were authorized or ratified by the defendant, he was at no time bound by them, and has gained nothing by the plaintiffs' giving a year's time for payment. And upon the same assumption the plaintiffs received no prejudice by agreeing to give time to the makers of the notes, for at no time could an action have been sustained upon them against either makers or endorser. The plaintiffs agreed not to sue on the notes, for twelve months; but, if the indorsements were forgeries and the holders received the notes from the makers as genuine, that agreement could not bar an action to recover whatever the plaintiffs may have advanced for the notes. Suppose they advanced money to the makers on the notes, or received them for goods sold, believing the endorsements to be genuine, an action for money advanced or goods sold might have been brought at any time, and this agreement would have been no obstacle to its successful prosecution. In no point of view, therefore, is this a case to which the doctrine of estoppel should be applied, so far as respects the question of forgery. The plaintiffs have not acted upon any admission of the genuineness of the endorsements, which the letter may be supposed to contain. They acted upon it, and gave time, and so far the defendant may be concluded. The defendant gained nothing by the letter, supposing the endorsements fictitious, and the plaintiffs received no prejudice by it, and upon no principle, as I view the case, should they recover against the defendant, unless the endorsements were made or authorized by him, or have been, with full knowledge, affirmed on his part, so as thereby to become obligatory on him. (See *Bell* ads. *Shields*, 4 Har. N. Jers. R., 93.)

In their agreement, giving time to Tyson & Co., the plaintiffs profess to have done so " at the request and for the accommodation of" the defendant; but this is not warranted by his letter, which is but a consent that time may be given to the makers of the notes, if the plaintiffs deem such an arrangement advisable; it authorizes, but does not ask that time may be given.

This is a proper question for a jury. The defendant's

Thorn v. Bell.

letter is evidence against him, but by no means conclusive. It can go to the jury with such explanations and further testimony as can be given by the respective parties, and may be relevant to the point in issue. Much testimony on the subject seems to have been received on the trial, although finally excluded from consideration by the view which the judge took of the case.

We are not now called upon to express an opinion upon the various questions which arose and were determined in the progress of the trial, but which, in the result, were virtually excluded from the case. Some things, certainly, occurred, the propriety of which may at least be questionable. For instance, that the plaintiffs should have been allowed to prove that a great number of notes, signed by Tyson & Co. and bearing the defendant's name as endorser, were in market in New York, while the defendant was refused permission to prove that most of these endorsements were forgeries, is what I can not accede to. But this is not the time to dispose of such questions.

New trial granted.